## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| GIDEON ASEN LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 2:21-cv-00189-NT |
| | ) | |
| JAMES T. GLESSNER, in his | ) | |
| Official Capacity as State Court | ) | |
| Administrator for the State of | ) | |
| Maine Judicial Branch, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Gideon Asen LLC alleges that Section 2857 of the Maine Health Security Act, as it is being implemented by the Defendant, violates the First Amendment of the U.S. Constitution by keeping confidential certain Maine Superior Court decisions issued during medical malpractice prelitigation panel proceedings. The Defendant has moved to dismiss the action (ECF No. 8). For the reasons set forth below, the Defendant's motion to dismiss is **GRANTED**.

### BACKGROUND[1]

The Maine Health Security Act, 24 M.R.S. § 2501 *et seq.* ("**MHSA**" or the "**Act**"), codifies Maine's medical malpractice system. Compl. ¶ 13 (ECF No. 1). Under the Act, every medical malpractice case brought in Maine must be screened by a prelitigation screening panel before proceeding to litigation in Maine Superior Court.

---

[1]   The facts are drawn primarily from the allegations in the Complaint, which I take as true for purposes of deciding the motion to dismiss. *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021).

Compl. ¶ 14. The purpose of the mandatory prelitigation screening panel is to identify meritorious claims of professional negligence "to encourage early resolution of those claims prior to commencement of a lawsuit" and "to encourage early withdrawal or dismissal of nonmeritorious claims." 24 M.R.S. § 2851(1).

The chair of the prelitigation screening panel may issue subpoenas and permit discovery, and the chair may rule on discovery-related requests itself or may allow the parties to seek a ruling in the Superior Court. *Id.* § 2852(5)–(6). Absent agreement of the parties, however, "[t]he panel has no jurisdiction to hear or decide . . . dispositive legal affirmative defenses." *Id.* § 2853(5). "The panel chair may require the parties to litigate, by motion, dispositive legal affirmative defenses in the Superior Court prior to submission of the case to the panel," or "[b]oth parties . . . may request that certain preliminary legal affirmative defenses or issues be litigated prior to submission of the case to the panel." *Id.* These legal issues, "as well as any motion relating to discovery that the panel chair has chosen not to rule on," may be put before the Superior Court by motion without the plaintiff needing to first file a complaint. *Id.*

Rule 80M of the Maine Rules of Civil Procedure governs the medical malpractice screening panel procedures. Me. R. Civ. P. 80M. Rule 80M(e) provides the mechanism by which the Maine Superior Court may weigh in on certain legal issues during prelitigation panel proceedings. Compl. ¶ 17. Before the panel hearing, the panel chair may "order the parties to resolve by motion in the Superior Court legal defenses or issues outside the jurisdiction of the screening panel." Compl. ¶ 17

(quoting Me. R. Civ. P. 80M(e)). If the panel chair determines that an issue is outside the panel's jurisdiction, the chair must "refer the motion to the Chief Justice of the Superior Court for assignment to a justice of the Superior Court." Compl. ¶ 17 (quoting Me. R. Civ. P. 80M(e)).

The MHSA mandates that "all proceedings before the . . . panel, including its final determinations, must be treated in every respect as private and confidential by the panel and the parties to the claim." Compl. ¶ 15 (quoting 24 M.R.S. § 2857(1)). The notice of claim (the document that initiates the prelitigation screening panel proceeding) and "all other documents filed with the court in the action for professional negligence during the prelitigation screening process are confidential." 24 M.R.S. § 2853(1-A). Under the Act, "written decisions of the Superior Court that are issued pursuant to Me. R. Civ. P. 80[M](e) are rendered confidential and not accessible to the public as a matter of course." Compl. ¶ 18.

According to the Plaintiff, in or about 2016, Justice Anderson on the Maine Superior Court issued a written decision on a legal question he was asked to adjudicate in a medical malpractice matter before the prelitigation screening panel. Compl. ¶¶ 19–20. And in or about 2016, Justice Murray on the Maine Superior Court issued a written decision on a legal question she was asked to adjudicate in a medical malpractice matter before the prelitigation screening panel. Compl. ¶¶ 21–21.1.[2] Both decisions were promptly sealed pursuant to Me. R. Civ. P. 80M(e) and have

---

[2]    The Complaint contains two paragraphs numbered 21 so I designate the second paragraph 21 as "¶ 21.1" for reference.

3

never been made public. Compl. ¶¶ 20, 21.1–22. The Plaintiff believes that, in addition to those two examples, justices of the Superior Court have issued other written decisions during the medical malpractice prelitigation screening process that have been sealed due to the confidentiality of the prelitigation screening panels. Compl. ¶ 23.

The Plaintiff alleges that Section 2857 of the Act violates the First and Fourteenth Amendments to the U.S. Constitution insofar as it requires that these judicial decisions be kept indefinitely under seal. Compl. ¶¶ 5, 25, 31. The Plaintiff, Gideon Asen LLC, is a law firm that specializes in medical malpractice litigation, and the Plaintiff claims to have an interest in having access to "written decisions by justices of the Superior Court on undecided issues of law in the area of medical malpractice." Compl. ¶¶ 6–7. In its one-count Complaint, the Plaintiff seeks a declaration that Section 2857 violates the First Amendment and an order enjoining the Defendant[3] from keeping Superior Court judicial decisions sealed (absent any non-MHSA-based reason for confidentiality). Compl. ¶ 31. The Defendant moved to dismiss the case pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[4] Def.'s Mot. to Dismiss Compl. ("**Def.'s Mot.**") (ECF No. 8). In its motion

---

[3]     The Plaintiff initially named two defendants: James T. Glessner, in his Official Capacity as State Court Administrator for the State of Maine Judicial Branch, and the Honorable Robert E. Mullen, in his Official Capacity as Chief Justice of the Maine Superior Court. *See* Compl. ¶¶ 8–14 (ECF No. 1). The Plaintiff voluntarily dismissed Chief Justice Mullen from the case on July 29, 2021. Notice of Voluntary Dismissal (ECF No. 7).

[4]     The Defendant styles its motion to dismiss as being brought solely under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Although Rule 12(b)(1) serves as the basis for the Defendant's contention that the Court lacks subject-matter jurisdiction due to the Plaintiff's lack of standing, I take the portion of the Defendant's motion to dismiss where it argues that the Plaintiff has failed to state a cognizable First Amendment claim as a motion brought pursuant to Rule 12(b)(6).

to dismiss, the Defendant argues that I should dismiss the Complaint because: (1) the Plaintiff lacks standing because it has not alleged a sufficiently particularized injury; (2) the *Younger* and *Pullman* abstention doctrines apply; and (3) the Plaintiff fails to state a claim because Section 2857 does not violate the First Amendment.

## LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss for lack of standing challenges whether the plaintiff " 'is a proper party to invoke' federal jurisdiction." *Dubois v. U.S. Dep't of Agric.,* 102 F.3d 1273, 1281 (1st Cir. 1996) (quoting *Warth v. Seldin,* 422 U.S. 490, 518 (1975)). A motion to dismiss under Rule 12(b)(6), on the other hand, "tests the 'legal sufficiency' of a complaint." *Me. Educ. Ass'n Benefits Tr. v. Cioppa*, 842 F. Supp. 2d 373, 376 (D. Me. 2012) (quoting *Gomes v. Univ. of Me. Sys.*, 304 F. Supp. 2d 117, 120 (D. Me. 2004)).

Although these two grounds for dismissal are "conceptually distinct," a reviewing court relies on the same plausibility pleading standard in evaluating a complaint for failure to establish standing and for failure to state a claim. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) (noting "[t]he parallelism between the threshold requirements needed to satisfy Rule 12(b)(6) and the threshold showing necessary for standing"). In both instances, the court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)); *see Hochendoner*, 823 F.3d at 730. "Just as the plaintiff bears the burden of plausibly

alleging a viable cause of action" to survive a Rule 12(b)(6) motion to dismiss, the plaintiff also "bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." *Hochendoner*, 823 F.3d at 730, 731 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Distinguishing sufficient from insufficient pleadings is a "context-specific task." *Iqbal*, 556 U.S. at 679.

The plausibility standard as applied to standing determinations requires that each element of standing "be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Hochendoner*, 823 F.3d at 730. (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992)). At the pleading stage, "the plaintiff must clearly allege facts demonstrating each element" of standing's three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks and alterations omitted). "[C]onclusory assertions" and "unfounded speculation" do not "supply the necessary heft." *Hochendoner*, 823 F.3d at 731.

In the Rule 12(b)(6) context, the pleading standard requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That "short and plain statement" need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted). "[A] complaint will survive a motion to dismiss when it alleges 'enough facts to state a claim to relief that is plausible on its face.' " *Alston*, 988 F.3d at 571 (quoting *Twombly*, 550 U.S. at 570). "Plausible" means "more than merely possible" but does

not require all facts necessary to establish a prima facie case. *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717–18 (1st Cir. 2014) (internal quotation marks omitted).

## DISCUSSION

The Defendant's first two arguments go to threshold questions of justiciability and the Court's capacity to hear this case—whether the Court has jurisdiction over the Plaintiff's First Amendment claim and, if it does, whether I nevertheless should abstain—so I start there.[5]

## I.    Standing

The Defendant maintains that the Plaintiff cannot challenge the constitutionality of Section 2857 because the Plaintiff has not alleged a particularized injury sufficient to establish standing under Article III of the Constitution. Def.'s Mot. 6–7. The Plaintiff counters that it does have standing to pursue its claim because it has satisfied all of Article III's standing requirements, including alleging an actual, concrete, and particularized injury. Pl.'s Opp'n to Def.'s Mot. to Dismiss ("**Pl.'s Opp'n**") 4–6 (ECF No. 12).

The justiciability doctrine of standing is rooted in Article III's "case and controversy" requirement, and it "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 578 U.S. at 338. To satisfy the standing requirement, "a plaintiff must establish each part

---

[5]     Standing is a necessary prerequisite to the Court's limited authority under Article III to adjudicate a case, and therefore challenges to standing must be addressed before reaching the merits. *See Baena v. KPMG LLP*, 453 F.3d 1, 4 (1st Cir. 2006).

of a familiar triad: injury, causation, and redressability." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560–61).

The only element that the Defendant challenges in its motion to dismiss is the "first and foremost" requirement in the standing analysis—injury in fact. *See Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (quoting *Spokeo*, 578 U.S. at 338). To establish injury in fact, a plaintiff must show that it suffered " 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo*, 578 U.S. at 339 (quoting *Lujan,* 504 U.S. at 560). "[A]n injury in fact must be both concrete *and* particularized." *Id.* at 340; *see Hochendoner*, 823 F.3d at 731 ("[C]oncreteness and particularization are distinct requirements."). "An injury is concrete only if it 'actually exist[s].' " *Hochendoner*, 823 F.3d at 731 (quoting *Spokeo*, 578 U.S. at 340). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (internal quotation marks omitted). "The particularization element of the injury-in-fact inquiry reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the persons injured by that conduct." *Hochendoner*, 823 F.3d at 731–32 (citing *Lujan,* 504 U.S. at 563).[6]

---

[6]     Holding the plaintiff to this particularization requirement ensures two things: (1) that "the decision as to whether review will be sought is in the hands of those who have a direct stake in the

Even taking the Plaintiff's allegations as true and drawing all reasonable inferences in its favor, as I am required to do at the pleading stage, I have doubts about whether the Plaintiff has met its burden. The Plaintiff alleges that, like all members of the public, it enjoys a First Amendment right to access court decisions. The Plaintiff claims that the Defendant is violating that right because, in implementing Section 2857 of the MHSA and Rule 80M, the Defendant seals from public view written decisions issued by the Maine Superior Court during medical malpractice screening panel proceedings. According to the Plaintiff, this confidential treatment precludes the public from accessing written decisions of the Maine Superior Court. Further, the Plaintiff alleges that, as a law firm that specializes in Maine medical malpractice law, it has a particularized "interest in understanding— and in having access to—written decisions by justices of the Superior Court on undecided issues of law in the area of medical malpractice," and that it seeks disclosure of existing and future opinions sealed under the Act. *See* Compl. ¶¶ 2, 7, 31. Finally, the Plaintiff says the Defendant's conduct "will cause great and irreparable injury" to the Plaintiff if not enjoined. Compl. 6.

The defect that the Defendant points out is that the Plaintiff does not allege that it has actually sought any of these confidential decisions. The Defendant argues that the Plaintiff "cannot plausibly allege particularized[7] harm from a policy that it

---

outcome," *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 732 (1st Cir. 2016) (quoting *Sierra Club v. Morton,* 405 U.S. 727, 740 (1972)), and (2) "that disputes are settled 'in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action,' " *Id.* (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 472 (1982)).

7       The Defendant describes this defect as a failure to meet the particularization prong of the standing inquiry. I see this as more of a concreteness issue. As to the particularization prong, the

has itself never encountered, never mind been hindered by." Def.'s Mot. 7; *see also* Def.'s Reply Mem. in Further Supp. of Mot. to Dismiss ("**Def.'s Reply**") 1–2 (ECF No. 13).

The Plaintiff counters that, because the decisions are sealed, it has no way of even knowing that any written decision has been handed down. *See* Pl.'s Opp'n 6. Unless the Plaintiff is a party to the prelitigation proceedings (in which case it presumably already would have access to any decisions issued in the matter), it would not be aware of the existence of those Superior Court decisions. But the Plaintiff does not allege that it ever asked any of the clerks of the Maine Superior Court to identify prescreening panel proceedings or provide any (or all) of the decisions that the courts issued to a panel proceeding.[8] And although the Plaintiff references two 2016 Superior Court decisions that it alleges have not been made public,[9] there is no allegation that the Plaintiff, or anyone else, has ever sought to have those opinions unsealed. *See* Compl. ¶¶ 19–22. Whether the Plaintiff would have been denied access is speculative and suggests the threatened injury might be too remote or

---

Plaintiff has alleged that it is a law firm that specializes in medical malpractice litigation and that it would be injured if denied access to opinions pertinent to the malpractice area of the law, which should be public under the First Amendment. To me, that seems sufficiently particularized. I need not decide whether the Plaintiff could also establish particularity as a member of the general public because it has alleged a more particular injury as a law firm specializing in malpractice.

[8]    The Plaintiff does allege that "[u]nder 24 M.R.S. § 2857, written decisions of the Superior Court that are issued pursuant to Me. R. Civ. P. 80[M](e) are rendered confidential and not accessible to the public as a matter of course." Compl. ¶ 18. While I am required to accept the Plaintiff's factual allegations as true, I am not required to accept the Plaintiff's legal conclusions. As I ultimately conclude that the MHSA is more ambiguous than the Plaintiff believes, I cannot assume that if the Maine Superior Court received a request for its opinions in prelitigation screening cases, it would decide that its opinions were necessarily confidential and inaccessible to the public.

[9]    It is not clear how the Plaintiff knew these two decisions existed.

insufficiently concrete to satisfy the case-or-controversy requirement needed for adjudication by a federal court. "Abstract injury is not enough." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

I acknowledge that whether an alleged injury is sufficient to satisfy the constitutional standing requirement is often a close question. *See, e.g.*, *Lujan*, 504 U.S. 555 (issuing four separate opinions and reversing the Eighth Circuit's divided decision that reversed the district court's standing determination). That is true here. And the defect identified by the Defendant is likely one that could be remedied if the Plaintiff were given an opportunity to ask the Maine Superior Court to identify and provide the decisions and were to be denied. Because I am not interested in making work for counsel and the state courts, I consider whether, assuming the Plaintiff could demonstrate standing, the Defendant's motion would otherwise be granted under abstention principles.

## II.  Abstention

The Defendant argues that the Court should abstain under both the *Younger* and *Pullman* abstention doctrines. Because I am persuaded that *Pullman* abstention is warranted, I address only that doctrine.

The Defendant contends that abstention is appropriate under the *Pullman* doctrine because this case involves difficult constitutional questions that hinge on unsettled state law, that is, the interpretation of Section 2857. Def.'s Mot. 10–13 (citing *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 499–500 (1941)). The Plaintiff disagrees that there exists an unsettled question of state law and suggests that, if that were a valid concern, I could certify any state law question to the Maine Supreme

11

Judicial Court. Pl.'s Opp'n 8–12. The Defendant counters that certification at this stage is not appropriate and that a state lawsuit would be the better course of action. Def.'s Reply 4–5.

Under *Pullman,* federal abstention "is warranted where (1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question." *Barr v. Galvin*, 626 F.3d 99, 107 (1st Cir. 2010) (quoting *Batterman v. Leahy*, 544 F.3d 370, 373 (1st Cir. 2008)). "Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." *Batterman*, 544 F.3d at 374 (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 439 (1971)). But a "federal court should stay its hand" to give the state court that first opportunity when a federal constitutional claim depends "on an unsettled question of state law." *Rivera-Feliciano v. Acevedo-Vilá*, 438 F.3d 50, 61 (1st Cir. 2006) (quoting *Harris Cnty. Comm'rs Ct. v. Moore,* 420 U.S. 77, 83 (1975)).

I agree with the Defendant that there is ambiguity in the MHSA provisions at issue here. Although "all proceedings before the *panel*" are confidential, 24 M.R.S. § 2857(1) (emphasis added), the statute does not state that all ancillary proceedings before the Superior Court are to be confidential as well. Section 2853 of the MHSA states that "[t]he notice of claim and all other documents filed with the court in the action for professional negligence during the prelitigation screening process are confidential." 24 M.R.S. § 2853(1-A). But it does not expressly state that the courts'

opinions on panel-referred motions are to be confidential, and it seems a stretch to say that the courts' own opinions are "documents filed *with* the court." *Id.* (emphasis added). Nor do the Maine Rules of Civil Procedure clearly state that the Superior Court's rulings on medical malpractice motions must remain confidential. Instead the rule confines itself to the panel's proceedings. *See* Me. R. Civ. P. 80M(a) ("Medical malpractice screening *panel* proceedings shall be confidential." (emphasis added)) And that same language can be found in the Advisory Committee's Notes.  Me. R. Civ. P. 80M advisory committee's note (2009) ("Medical malpractice screening panels are confidential by statute."); *id.* ("Panel proceedings and the deliberations of the panel are confidential.").[10]

While the Plaintiff alleges that the Defendant has a practice of sealing the decisions on the prelitigation motions that are referred to the courts, it does not appear that anybody has ever challenged that practice. Maine's highest court has not had the opportunity to decide, in the context of a First Amendment challenge, whether the statute requires sealing of the state courts' opinions in addition to panel proceedings. Particularly where the state law touches on both the state judiciary's administration of its own business and the state's unique prelitigation screening mechanism, the state should have an opportunity to decide the question in the first instance.

---

[10]      The Maine Supreme Judicial Court also has noted the distinction between panel proceedings and the "collateral" matters that may come before the courts. *See Gafner v. Down E. Cmty. Hosp.*, 1999 ME 130, ¶ 28, 735 A.2d 969 (explaining that "the panel's responsibility is to focus on . . . professional negligence" while the Superior Court handles "legal affirmative defenses or issues that are collateral to the central issue of negligence").

In *Barr v. Galvin*, the First Circuit faced an ambiguous state statute on the substitution of presidential and vice-presidential candidates on the ballot. 626 F.3d at 106–08. The First Circuit noted that the statute "seem[ed] susceptible to clarification by judicial interpretation," but it stopped short of offering that clarification, instead deciding that "the needed interpretation is a task for which the state courts, as the ultimate arbiters of state-law questions, are better suited." *Id.* at 107. While the court was mindful that abstention is the exception rather than the rule, it concluded, under the *Pullman* abstention doctrine, that because the law was susceptible to several alternative meanings, "[t]he Massachusetts courts should therefore be afforded the opportunity to address, in the first instance, the question of the statute's application to non-party presidential and vice-presidential candidates." *Id.* at 108. Further, the First Circuit noted that the absence of an existing parallel proceeding in the state court was not fatal to abstention. Noting that there were two years before the next election, the court found that the delay in obtaining relief "would impose no onerous burden upon the parties." *Id.* at 108 n.3. Here, the MHSA has been around since the mid-eighties. The Plaintiff has demonstrated no urgency.

The Plaintiff argues that abstention under *Pullman* is not required and suggests that I stay the case and certify the question regarding the interpretation of the statute to the Law Court rather than abstain. Pl.'s Opp'n 10. While it is true that the Supreme Court has stated that "[c]ertification today covers territory once dominated by a deferral device called '*Pullman* abstention,'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 75 (1997), it appears that in the First Circuit, dismissal

14

without prejudice in favor of a state proceeding is still an option, *see Barr*, 626 F.3d at 113. Based on principles of comity and considerations of efficiency, and because I deem the standing question a close call, I believe that dismissal rather than certification is the best option. While I am mindful of the Court's "virtually unflagging obligation" to exercise its jurisdiction, "this obligation is not absolute." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 191 (1st Cir. 2015) (internal quotation marks omitted). I conclude that in these unique circumstances, *Pullman* abstention is warranted.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendant's motion to dismiss (ECF No. 8) without prejudice.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 4th day of February, 2022.

15